1

2

3

4            **UNITED STATES DISTRICT COURT**

5               **DISTRICT OF NEVADA**

6

7   DAVID J. MIRELES,                    )
                                         )
              Plaintiff,                 )
8                                        )
9       vs.                              )        3:11-cv-00503-RCJ-VPC
                                         )
10  INFOGROUP/OPINION RESEARCH CORP. et  )        **ORDER**
    al.,                                 )
11                                       )
              Defendants.                )
                                         )
12  ─────────────────────────────────────)

13          This case arises out of the termination of an employee, resulting in his parole revocation.

14  Pending before the Court are three motions to dismiss and Plaintiff's motion to reconsider

15  extension of his free copy work limit.  For the reasons given herein, the Court grants the motions

16  to dismiss, with leave to amend in part, and denies the motion to reconsider.

17  **I.    FACTS AND PROCEDURAL HISTORY**

18          Plaintiff David J. Mireles is a prisoner at the Northern Nevada Correctional Center

19  serving a life sentence for sexual assault, and whose parole was revoked when Defendant

20  Infogroup/Opinion Research Corp. ("ORC") terminated him for sexual harassment. (*See* Compl.,

21  July 21, 2011, ECF No. 8, at 1, 5–8).  Gwyn LNU hired Plaintiff to work at ORC's call center in

22  Reno, Nevada on July 29, 2009. (*Id.*, ECF No. 8, at 5).  Plaintiff disclosed his criminal history

23  and parole to Gwyn, who hired him on the condition that he never reveal it to anyone else at

24  ORC. (*Id.*).  Seven months later, on March 23, 2010, day shift supervisor Jamie Botelho

25  summoned Plaintiff to her office, where six other white female supervisors were already present,

1   and informed him that a white female employee had accused him of sexual harassment. (*Id.*, ECF

2   No. 8, at 5–6).  Plaintiff denied the accusation, but Botelho told him that they knew he was on

3   parole for sexual assault and that if anyone else complained of sexual harassment he would be

4   terminated. (*Id.*, ECF No. 8, at 6).  Plaintiff avoided contact with coworkers to prevent any

5   complaints, but he began to sense hostility from his coworkers, who began to avoid him, and on

6   or about May 6, 2010, Botelho again summoned him to her office and terminated him for

7   allegedly sexually harassing another female coworker. (*Id.*, ECF No. 8, at 8–9).  Plaintiff

8   believes that several coworkers conspired falsely to accuse him of sexual harassment and that

9   despite his exemplary work record, he was terminated because he was on parole for sexual

10  assault, he is a Hispanic male, and he had protested to his supervisors about ORC's policies of

11  wilfully and illegally putting people back onto call lists who had requested to be taken off of the

12  lists and lying to them about use of their personal information. (*See id.*, ECF No. 8, at 11–13,

13  17–19).

14        Plaintiff informed his parole officer of his termination for sexual harassment, and she

15  submitted a warrant application and recommendation of parole revocation. (*Id.*, ECF No. 8, at

16  15).  On July 13, 2010, she arrested him, and on October 5, 2010, the Revocation Board found

17  him responsible for violating his parole by sexually harassing his coworkers, relying on

18  Botelho's statements. (*Id.*).

19        Plaintiff filed a seventy-three-page Complaint in pro se against ORC, its president in

20  New Jersey, and twelve of its employees in Reno, Nevada, asserting various civil rights and

21  other federal and state law claims.  Because it was not a "short plain statement," the Court

22  dismissed the Complaint with leave to amend and provided Plaintiff with guidance for

23  organizing his complaint into distinct causes of action.  The First Amended Complaint ("FAC")

24  lists seventeen causes of action: (1) Wrongful Termination; (2) Race Discrimination under Title

25  VII; (3) Hostile Work Environment under Title VII ("Sexual Harassment"); (4) Blacklisting

under 29 U.S.C. § 621; (5)–(6) Civil Rights Conspiracy under 42 U.S.C. §§ 1985–1986; (7) Breach of Contract; (8) "Failure to Train"; (9) "Entity Liability - Policy/Procedure/Custom"; (10) Negligence; (11) Intentional Infliction of Emotional Distress ("IIED"); (12) Negligence Infliction of Emotional Distress ("NIED"); (13) Injunctive Relief; (14) "Whistleblower"; (15) Racketeering under 18 U.S.C. § 1962(c); (16) Compensatory Damages; and (17) Punitive Damages.  Defendants have moved to dismiss.  Also, Plaintiff has asked the Court to reconsider its denial of his request to extend his free use of the prison copy machine.

## II.   LEGAL STANDARDS

Federal Rule of Civil Procedure 8(a)(2) requires only "a short and plain statement of the claim showing that the pleader is entitled to relief" in order to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Conley v. Gibson*, 355 U.S. 41, 47 (1957).  Federal Rule of Civil Procedure 12(b)(6) mandates that a court dismiss a cause of action that fails to state a claim upon which relief can be granted.  A motion to dismiss under Rule 12(b)(6) tests the complaint's sufficiency. *See N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).  When considering a motion to dismiss under Rule 12(b)(6) for failure to state a claim, dismissal is appropriate only when the complaint does not give the defendant fair notice of a legally cognizable claim and the grounds on which it rests. *See Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In considering whether the complaint is sufficient to state a claim, the court will take all material allegations as true and construe them in the light most favorable to the plaintiff. *See NL Indus., Inc. v. Kaplan*, 792 F.2d 896, 898 (9th Cir. 1986).  The court, however, is not required to accept as true allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001).  A formulaic recitation of a cause of action with conclusory allegations is not sufficient; a plaintiff must plead facts showing that a violation is plausible, not just possible. *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949 (2009)

1    (citing *Twombly*, 550 U.S. at 555).

2          "Generally, a district court may not consider any material beyond the pleadings in ruling

3    on a Rule 12(b)(6) motion.  However, material which is properly submitted as part of the

4    complaint may be considered on a motion to dismiss." *Hal Roach Studios, Inc. v. Richard Feiner*

5    *& Co.*, 896 F.2d 1542, 1555 n.19 (9th Cir. 1990) (citation omitted).  Similarly, "documents

6    whose contents are alleged in a complaint and whose authenticity no party questions, but which

7    are not physically attached to the pleading, may be considered in ruling on a Rule 12(b)(6)

8    motion to dismiss" without converting the motion to dismiss into a motion for summary

9    judgment. *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994).  Moreover, under Federal Rule

10   of Evidence 201, a court may take judicial notice of "matters of public record." *Mack v. S. Bay*

11   *Beer Distribs., Inc.*, 798 F.2d 1279, 1282 (9th Cir. 1986).  Otherwise, if the district court

12   considers materials outside of the pleadings, the motion to dismiss is converted into a motion for

13   summary judgment. *See Arpin v. Santa Clara Valley Transp. Agency*, 261 F.3d 912, 925 (9th

14   Cir. 2001).

15   **III.   ANALYSIS**

16          The claims for injunctive relief, compensatory damages, and punitive damages are not

17   independent causes of action and will be dismissed, though these measures of relief are not

18   necessarily precluded if Plaintiff can succeed on other claims.  Next, the claims for "failure to

19   train" and "entity liability - policy/procedure/custom" implicitly invoke 42 U.S.C. § 1983 and

20   *Monell*, and the Court has already explained to Plaintiff that Defendants are private entities who

21   may not be sued under that statute.  The § 1983 claims are dismissed with prejudice.  The

22   remaining claims are addressed herein.

23          **A.      Wrongful Termination**

24          "Under Nevada law, the absence of a written contract gives rise to the presumption that

25   employment is at will." *Brooks v. Hilton Casinos, Inc.*, 959 F.2d 757, 759 (9th Cir.1992) (citing

1   *Vancheri v. GNLV Corp.*, 777 P.2d 366, 368 (Nev. 1989)).  At-will employment can be

2   terminated without liability by either the employer or the employee at any time and for any

3   reason or no reason, *Martin v. Sears-Roebuck & Co.*, 899 P.2d 551, 554 (Nev. 1995), with

4   limited exceptions based on "strong public policy," *see Hansen v. Harrah's*, 675 P.2d 394, 396

5   (Nev. 1984) (holding that an at-will employee can bring an action for retaliatory discharge when

6   fired in retaliation for filing a worker's compensation claim).

7         As Plaintiff has not specifically alleged a written contract, the presumption of at-will

8   employment applies.  An employer may be liable for tortious discharge in Nevada in the context

9   of an at-will employment relationship where it terminates an employee in a way repugnant to the

10   strong public policy of the state. *Hansen*, 675 P.2d at 396.  The Supreme Court of Nevada has

11   noted that terminating an employee "for seeking industrial insurance benefits, for performing

12   jury duty or for refusing to violate the law" are examples of violations of strong public policy.

13   *See D'Angelo v. Gardner*, 819 P.2d 206, 212 (Nev.1991).  Not all terminations contrary to the

14   express public policy of the state, however, necessarily implicate the "strong public policy"

15   exception to the at-will employment rule, *see, e.g., Sands Regent v. Valgardson*, 777 P.2d 898,

16   899 (Nev. 1989) (age discrimination), and firings for garden-variety insubordination are not

17   contrary to public policy at all, *Wayment v. Holmes*, 912 P.2d 816, 819 (Nev. 1996).

18         Here, Plaintiff alleges he was terminated based upon a false report of sexual harassment

19   against him because an employer who terminates an employee for this reason need not pay him

20   unemployment benefits.  This allegation is conclusory, however, and Plaintiff asserts no basis for

21   believing it.  In any case, Plaintiff would not be eligible for unemployment if he returned to

22   prison after being terminated—the inevitable result—and so it is implausible that the employer

23   here was motivated by a desire to avoid paying unemployment benefits.  Elsewhere in the FAC,

24   Plaintiff implies that he was terminated for complaining about the company's use of customers'

25   personal information.

1       The Nevada Supreme Court is extremely protective of the at-will employment rule and

2   does not adopt exceptions lightly.  It does not automatically adopt exceptions even where

3   supported by explicit legislative statements of public policy. *See Valgardson*, 777 P.2d at 899

4   ("Clearly, Nevada has a public policy against age discrimination.  Nevertheless, we do not

5   perceive that our public policy against age discrimination is sufficiently strong and compelling to

6   warrant another exception to the 'at-will' employment doctrine.").  In that case, the Court

7   rejected an exception for age discrimination in the face of a statute explicitly stating: "It is

8   hereby declared to be the public policy of the State of Nevada to . . . foster the right of all

9   persons reasonably to seek, obtain and hold employment . . . without discrimination, distinction

10  or restriction because of . . . age . . . ." *See id.* at 900 n.3 (quoting Nev.Rev.Stat. § 233.010(1)).  It

11  is therefore very unlikely the Nevada Supreme Court would adopt an exception to the at-will

12  employment rule applicable to all cases where an employee complains about the employer's

13  supposedly illegal practices.  Although it could reasonably be said that being terminated for

14  challenging an employer's practice that in fact violates the law is a termination against public

15  policy, the Nevada Supreme Court applies its "strong public policy" rule very narrowly, making

16  exceptions on a case-by-case basis.  Plaintiff does not identify any law he believes Defendants

17  were breaking with respect to their use of customers' personal information.  Perhaps if he alleged

18  that his employer specifically instructed him to break the law and indicated that it knew it would

19  be breaking the law, the Nevada Supreme Court would be receptive, but Plaintiff has not pled

20  such facts.  He alleges that he was terminated, in part, for challenging practices that he believes

21  might violate some law.  It is certain that the Nevada Supreme Court would not adopt an

22  exception to the at-will employment doctrine that broad.  Also, the Nevada Supreme Court does

23  not permit mixed-motivation wrongful termination claims, and Plaintiff alleges the motivation

24  was in part due to a complaint of sexual harassment against him. *See Allum v. Valley Bank of*

25  *Nev.*, 970 P.2d 1062, 1066 (Nev. 1998).  This claim is dismissed with prejudice.

1      **B.      Race Discrimination and Hostile Work Environment under Title VI**I

2          To establish subject matter jurisdiction over a Title VII claim, a plaintiff must exhaust his

3    administrative remedies by filing a charge with the Equal Employment Opportunity Commission

4    ("EEOC") or its state counterpart (in Nevada, the Nevada Equal Rights Commission ("NERC")).

5    *See, e.g.*, *Vasquez v. Cnty. of L.A.*, 349 F.3d 634, 644 (9th Cir. 2003).  Because Plaintiff does not

6    allege having filed any discrimination or harassment complaint with the EEOC or NERC, the

7    Court has no jurisdiction to entertain these claims.  Plaintiff may amend the complaint to plead

8    administrative exhaustion.

9      **C.      Blacklisting under 29 U.S.C. § 621**

10         Section 621 contains congressional findings about age discrimination.  The Court will

11   address the claim as if both age discrimination and blacklisting claims are intended.

12         First, Assuming for the sake of argument that certain kinds of blacklisting can constitute

13   illegal retaliation under federal law, Plaintiff does not allege that any person has refused to rehire

14   him based upon a blacklist created or maintained by Defendants.  He alleges only that his former

15   employer will not rehire him, though he does not allege that he has reapplied or that he could

16   work there while incarcerated.  An employer that terminates a person for sexual harassment will

17   probably not rehire that person, but that isn't retaliatory "blacklisting."  An employer that has

18   direct experience of an employee from the past will of course consider that knowledge, just as it

19   will consider information from an employee's resume and references, when deciding whether to

20   rehire the person.  It isn't "retaliation" for an employer to consider its direct knowledge of an

21   employee's past behavior when considering whether to rehire him.  A "blacklist" is a list of

22   persons not to hire that is distributed throughout an industry or geographic area, based upon

23   which employers refuse to consider the persons listed thereon, without any individual

24   consideration.  Plaintiff has not alleged this practice or that he has been prevented from

25   employment because of it.  The blacklisting claim is dismissed with prejudice.

Second, although he need not await a right-to-sue letter as with Title VII claims, Plaintiff cannot bring an Age Discrimination in Employment Act ("ADEA") claim until sixty days after he has filed a complaint with the EEOC or the NERC, and he does not allege having done so. *See Sanchez v. Pac. Power Co.*, 147 F.3d 1097, 1099 (9th Cir. 1998). This claim is dismissed with leave to amend as an ADEA claim.

### D.      Civil Rights Conspiracy under 42 U.S.C. §§ 1985–1986

Plaintiff alleges a civil rights conspiracy between ORC and the individual Defendants. But he alleges that the impetus for the conspiracy was that "Plaintiff inadvertently discovered that [ORC] and their supervisory staff were involved in committing racketeering." (Second Am. Compl., Oct. 25, 2011, ECF No. 44, at 12). He does not allege a conspiracy to deprive him of the equal protection of the laws based upon some class-based animus. And even if he alleged such a thing, he does not allege that any of the individual Defendants acted outside the scope of their employment with ORC or that ORC acted beyond its corporate function such that their actions fall without the intracorporate activity doctrine. *See Johnson v. Hills & Dales Gen. Hosp.*, 40 F.3d 837, 839–41 (6th Cir. 1994). This claim is dismissed with prejudice.

### E.      Breach of Contract

Plaintiff alleges the breach of an oral employment contract. Specifically, he alleges that Gwyn broke her promise never to tell anyone of his criminal history. But Plaintiff's allegations indicate that Gwyn simply gave Plaintiff this warning for his own protection and for her protection against ORC itself. The facts pled do not indicate that the warning was understood to be a term of employment between Plaintiff and ORC. This claim is dismissed with prejudice.

### F.      Negligence

Plaintiff alleges that Gwyn was negligent in keeping his criminal history secret, resulting ultimately in his termination. Speaking about another person is not actionable unless the statement is false and the speaker was at least negligent as to the statement's falsity, i.e., a

defamation claim.  Because Plaintiff admits the statements he suspects Gwyn made were true, there is no defamation claim here.  Plaintiff cannot circumvent the standards of a defamation claim by recharacterizing an alleged statement about him as negligence.  The making of a true statement that is not a violent threat in-and-of-itself cannot lead to civil liability under the First Amendment, even if harm results, no matter how the claim is characterized.

Furthermore, Gwyn's alleged revelation of Plaintiff's criminal history cannot be said to be the proximate cause of his termination under the facts pled.  Plaintiff does not allege that Gwyn spoke to her supervisor about his criminal history and that the supervisor terminated him directly for this reason.  Rather, he alleges that he was eventually terminated because of a conspiracy between his coworkers to falsely accuse him of sexual harassment—a conspiracy that they independently determined to initiate.  Gwyn's alleged revelation of Plaintiff's criminal history is divorced from his termination because Plaintiff affirmatively alleges that independent actors made the choice to engage in a wrongful conspiracy based upon this information, not that his termination directly flowed from Gwyn's alleged act.  This claim is dismissed with prejudice.

### G.    IIED and NIED

The elements of an IIED claim are "(1) extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress, (2) the plaintiff's having suffered severe or extreme emotional distress and (3) actual or proximate causation." *Star v. Rabello*, 625 P.2d 90, 91–92 (Nev. 1981).

Terminating a person for alleged sexual harassment does not constitute extreme and outrageous conduct.  Moreover, the generic mental anguish Plaintiff alleges cannot support an IIED claim.  In *Miller v. Jones*, the Nevada Supreme Court affirmed summary judgment against an IIED claim where:

> [plaintiff failed] to point to any evidence which demonstrate[d] that he suffered from severe or extreme emotional distress.  Although [plaintiff] stated in his deposition that he was depressed for some time, he did not seek any medical or psychiatric

1

2          assistance.  He presented no objectively verifiable indicia of the severity of his
           emotional distress.  We conclude that [plaintiff's] brief depositional testimony
           regarding depression was insufficient to raise a genuine issue of material fact as to
3          whether he suffered severe emotional distress.  Accordingly, we conclude that the
           district court did not err in granting summary judgment on the IIED claim.

4   970 P.2d 571, 577 (Nev. 1998).  The Court recently reaffirmed the rule:

5               We have previously required a plaintiff to demonstrate that he or she has
           suffered some physical manifestation of emotional distress in order to support an
6          award of emotional damages. *See, e.g.*, *Barmettler v. Reno Air, Inc.*, 114 Nev. 441,
           448, 956 P.2d 1382, 1387 (1998) ("[I]n cases where emotional distress damages are
7          not secondary to physical injuries, but rather, precipitate physical symptoms, either
           a physical impact must have occurred or, in the absence of physical impact, proof of
8          'serious emotional distress' causing physical injury or illness must be presented.");
           *Chowdhry v. NLVH, Inc.*, 109 Nev. 478, 482–83, 851 P.2d 459, 462 (1993).  While
9          we have relaxed the physical manifestation requirement in a few limited instances,
           *see Olivero v. Lowe,* 116 Nev. 395, 400, 995 P.2d 1023, 1026 (2000) (explaining that
10         the physical manifestation requirement is more relaxed for damages claims involving
           assault), we cannot conclude that a claim for emotional distress damages resulting
11         from deceptive trade practices in connection with a failed real estate and lending
           transaction should be exempted from the physical manifestation requirement.

12  *Betsinger v. D.R. Horton, Inc.*, 232 P.3d 433, 436 (Nev. 2010).  The basis for the emotional

13  distress claims here is not assault, but employment termination and shunning while still

14  employed.  Plaintiff alleges no objectively verifiable physical symptoms of distress.  The IIED

15  claim is dismissed with prejudice.

16      The Nevada Supreme Court last laid out the elements of a separate NIED claim in 1999:

17  "the witness-plaintiff must prove that he or she (1) was located near the scene; (2) was

18  emotionally injured by the contemporaneous sensory observance of the accident; and (3) was

19  closely related to the victim." *Grotts v. Zahner*, 989 P.2d 415, 416 (Nev. 1999).  This is a version

20  of the "*Dillon* rule." Dan B. Dobbs, *The Law of Torts* § 302 (West 2000); *see Dillon v. Legg*, 441

21  P.2d 912, 920 (Cal. 1968).  Nevada expressly adopted the *Dillon* rule in *State v. Eaton*, 710 P.2d

22  1370, 1377–78 & n.11 (Nev. 1985).  In summary, Nevada recognizes the traditional NIED tort

23  for a bystander's emotional injury caused by witnessing physical injury to a third person caused

24  by a defendant's negligence.  But in any case, a claim for NIED must be predicated on emotional

25

harm to a bystander plaintiff caused by that plaintiff's observance of physical harm to the victim through the defendant's negligence. This is the crux of an NIED claim. Although the names of the two causes of action imply that an NIED claim is simply an IIED claim with "negligence" substituted for "intent," this is not so. A separate claim of NIED typically lies only where the emotional harm is based on observance of a physical injury to another, usually a close relative.

The Nevada Supreme Court has stated that it recognizes torts for both IIED and NIED in the context of wrongful employment termination, and that in either case, "the plaintiff needs to show 'extreme and outrageous conduct with either the intention of, or reckless disregard for, causing emotional distress.'" *State v. Eighth Judicial Dist. Court ex rel. County of Clark*, 42 P.3d 233, 241 (quoting *Shoen v. Amerco.*, 896 P.2d 469, 476 (1995) (quoting *Rabello*, 625 P.2d at 91–92)). This statement requires further analysis, however, because the implication that a claim for NIED must include intent or recklessness on the part of the tortfeasor appears at odds with itself and may be an indication that the Court misspoke when it characterized the nature of the claim.

A closer analysis indicates that the Court in *Eighth Judicial District Court* was not referring to NIED as a separate cause of action, but rather was referring to the fact that damages can be recovered for emotional harm stemming from other intentional or negligent torts. This measure of damages is sometimes called "parasitic damages." *See* Dobbs, *supra*, § 302. This reading is supported by the fact that the Court in *Eighth Judicial District Court* cited only to a page of *Shoen* that discusses IIED, not to the later pages that discuss NIED. Furthermore, *Rabello*, from which the above quotation from *Eighth Judicial District Court* originates, involved no claim at all of NIED, but only of IIED. *See* 625 P.2d at 91–92. In the relevant passage in *Shoen* that actually discusses NIED—a passage to which the *Eighth Judicial District Court* Court did not cite—the *Shoen* Court stated:

> An examination of the case law indicates that Nevada has not expressly permitted damages to be recovered for the infliction of emotional distress in a

1
2
3
4
5

negligence cause of action.  [But i]f a bystander can recover for the negligent infliction of emotional distress, it is only logical that the direct victim be permitted the same recovery.  Many times a tort claim may be based on evidence that presents a close case of whether an intentional or a negligent act was committed.  In these cases, the direct victim should be able to assert a negligence claim that includes emotional distress as part of the damage suffered as well as an intentional tort cause of action.  Accordingly, we recognize that the negligent infliction of emotional distress can be *an element of the damage sustained by the negligent acts committed directly against the victim-plaintiff.*

6   896 P.2d at 477 (emphasis added).  The *Shoen* Court recognized that it would be inconsistent to

7   hold that the doctrine of proximate cause permits a separate NIED tort when a bystander who is

8   not physically injured suffers emotional distress by witnessing another's injury, but to then hold

9   that emotional distress is unavailable as a measure of damages for the direct victim of the

10  negligence.

11        *Shoen* permits a direct victim of a defendant's negligence to plead an NIED claim.  But

12  although *Shoen* made emotional harm available as a measure of damages for a simple negligence

13  claim, the case did not expand the NIED cause of action itself to include an alternative to IIED

14  where the defendant's conduct was merely negligent.  The significance of the distinction is that

15  to recover parasitic damages for emotional harm based on a simple negligence claim, a plaintiff

16  must prove cognizable harm separate from the emotional harm itself, whereas a putative NIED

17  claim that mirrors an IIED claim in all aspects but mens rea would permit recovery based purely

18  upon the emotional harm itself.  No such cause of action exists.  Because no bystander harm

19  situation is alleged in this case, the Court dismisses the NIED claim with prejudice.  And

20  although emotional harm is potentially available as a measure of damages if other claims in this

21  case are established, *see Shoen*, 896 P.2d at 477, as noted, *supra*, recovery of this measure of

22  damages in Nevada requires physical impact or objective evidence of physical manifestation of

23  the emotional distress, and Plaintiff pleads neither.

24        **H.    "Whistleblower"**

25        Plaintiff appears to intend to invoke the "whistleblower" provision of the federal False

Claims Act ("FCA"). *See* 31 U.S.C. § 3730(h)(1). "A plaintiff alleging a FCA retaliation claim must show three elements: (1) that he or she engaged in activity protected under the statute; (2) that the employer knew the plaintiff engaged in protected activity; and (3) that the employer discriminated against the plaintiff because he or she engaged in protected activity." *Mendiondo v. Centinela Hosp. Med. Ctr.*, 521 F.3d 1097, 1103 (9th Cir. 2008). "[T]he heightened pleading requirements of Rule 9(b) do not apply to FCA retaliation claims. Instead, a FCA retaliation claim must meet the Rule 8(a) notice pleading standard." *Id.* Plaintiff need only allege that he reasonably believed the employer was committing fraud under the FCA, and that he was terminated for investigating it. *See id.* Section 3729(a) lists activities constituting false claims. Plaintiff alleges ORC encouraged the coercion and extraction of personal information from persons during telephone surveys. This kind of activity is not covered by FCA. *See* 31 U.S.C. § 3729(a)(1)(A)–(G). Plaintiff nowhere alleges that ORC made any false or inflated claims to the government or doctored documents to avoid or reduce its obligations to the government. Plaintiff therefore has not alleged that he was engaged in protected activity under the FCA. This claim is dismissed with prejudice.

## I. Racketeering under 18 U.S.C. § 1962(c)

Plaintiff alleges that the predicate offenses of the racketeering claim consisted of "extort[ing], coerc[ing], [and] extract[ing] private personal information, [and] l[ying], mislead[ing], [and] promis[ing] something they don't deliver, from people taking their surveys . . . ." Plaintiff has not alleged any of the predicate acts of racketeering activity listed in 18 U.S.C. § 1961(1). Even assuming the alleged practice constitutes wire fraud under 18 U.S.C. § 1343, persons terminated for refusing to cooperate in alleged RICO schemes but who are not directly injured by the alleged predicate acts themselves do not have standing to sue under the RICO statute. *Reddy v. Litton Indus., Inc.*, 912 F.2d 291, 294 (9th Cir. 1990). This claim is dismissed with prejudice.

1

**CONCLUSION**

2 IT IS HEREBY ORDERED that the Motion to Reconsider (ECF No. 47) is DENIED.

3 IT IS FURTHER ORDERED that the Motion to Extend Time (ECF No. 52) is

4 GRANTED.

5 IT IS FURTHER ORDERED that the Motions to Dismiss (ECF Nos. 48, 54, 61) are

6 GRANTED, with leave to amend the Title VII and ADEA claims as against Defendant

7 Infogroup/Opinion Research Corp. only.

8 IT IS SO ORDERED.

9 Dated this 10th day of January, 2012.

10         _____

11          ROBERT C. JONES
         United States District Judge

12

13

14

15

16

17

18

19

20

21

22

23

24

25